Arthur M. MOOSE, Appellee,

v.

Franklin X. RICH, Appellant.

No. 2–58306.

Supreme Court of Iowa.

May 25, 1977.

Roy W. Meadows, Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellant.

Coppola, Trout, Taha & Gazzo, Des Moines, for appellee.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

REES, Justice.

This is an appeal by defendant Franklin X. Rich, employed as a superintendent by Acoustical Specialties, Inc., from a judgment in the amount of $285,000 rendered against him on a jury verdict in favor of plaintiff, Arthur M. Moose, a fellow employee, in an action for damages based on defendant's claimed negligence. We affirm.

Plaintiff Moose had been an employee of Acoustical Specialties, Inc., and its predecessor companies for over 25 years, and for 15 years of that period the defendant Rich had been plaintiff's superintendent and foreman. Moose was directed by defendant Rich to install a ceiling in Ward's Pharmacy in Altoona on September 29, 1971. The plaintiff stopped at the warehouse maintained by his employer in Des Moines to pick up scaffolding before leaving for Altoona. The warehouse is a large building which was used jointly by Acoustical Specialties and Gurwell Transfer Company. Rich assisted Moose in loading a scaffold onto plaintiff's truck and both parties then looked over the available scaffold flooring boards. After examining the flooring boards, plaintiff observed the boards were "junky" and testified at trial that defendant then told plaintiff to "take it or leave it." The scaffolding platform boards, when new, are banded on the edge by metal bands to prevent fraying, but the plywood deck board which Moose used on the day of his injury was not so banded. The corners were frayed and badly rounded so that the flooring boards did not sit securely within the framework of a scaffold.

It is evident from the record that while plaintiff was installing a ceiling at the Altoona pharmacy he shifted his weight on the scaffold and the flooring shifted and slipped off the scaffold causing plaintiff to fall. He sustained an injury to his leg, making it impossible for him to walk without the aid of a prosthetic device and while amputation of the leg might relieve the pain, it appears from the record plaintiff is diabetic and that amputation of the limb is medically inadvisable. Plaintiff has been unemployed since the date of the accident.

Plaintiff received an award under the Workers' Compensation coverage of his employer and later instituted the action

against the defendant, which resulted in the entry of judgment in his favor on jury verdict and this appeal.

Defendant urges multiple issues for review which he contends require a reversal. Without enumerating them in detail, we proceed to a consideration of the several issues so stated.

### I. Evidentiary rulings.

Defendant contends trial court erred in ruling on evidence sought to be introduced by the plaintiff in four separate areas.

(a) *Introduction of photographs and expert testimony related thereto.*

On Labor Day, 1973 plaintiff and a private investigator, one Redman, entered the warehouse which was occupied jointly by Acoustical Specialties and Gurwell Transfer Company for the purpose of obtaining evidence relating to this case. While there is some question as to just how they gained admittance to the warehouse, it is evident from the record that they proceeded to that portion of the warehouse occupied by Acoustical Specialties through the portion occupied by Gurwell Transfer Company. No permission had been obtained from Acoustical Specialties to make an inspection of the scaffolding and the scaffold boards which was the purpose of the visit by plaintiff and his investigator.

Defendant asserts that the entry on the premises of Acoustical Specialties was illegal and at trial moved to suppress any evidence obtained in connection with the visit to the warehouse. The trial court overruled the motion to suppress and the photographs of the scaffold and scaffold boards were introduced, and expert testimony based on the photographs was adduced from plaintiff's witnesses. Defendant here urges us to extend the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) to this civil controversy.

■ Any objection to an unreasonable search must be urged by the party whose rights were claimed to have been violated. The defendant here has no standing to as-

sert that the rights of others (in this case, Acoustical Specialties, Inc.) have been violated by the claimed unlawful search. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 3049, 49 L.Ed.2d 1067 (1976).

■ Furthermore, the Fourth Amendment protection against illegal searches and seizures applies to state action by way of the Fourteenth Amendment, and there is no constitutional prohibition against private actions which, if instituted under color of state law, would be prohibited. The question falls within the category of legislative rather than judicial action, and even if defendant had the proper standing to assert such extension of the exclusionary rule we would decline to entertain the question. *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 3028–3029, 3034, 49 L.Ed.2d 1046 (1976).

We note that Myron Olson, the president of Acoustical Specialties, Inc., testifying on cross-examination, indicated that if the plaintiff and his investigator had requested permission to inspect the scaffolding in the warehouse he would have given such permission.

(b) *Plaintiff's release of his employer and its insurer.*

Defendant contends trial court erred in sustaining plaintiff's motion to strike the amendment to the answer filed by defendant setting out the defense of release of all claims based upon a signed release of plaintiff's employer and its insurer.

■ Obviously, a release of the employer executed in accordance with the mandate of § 85.47, The Code, cannot operate to bar recovery from parties except as provided by chapter 85. Section 85.22, The Code, specifically permits recoupment by an injured employee from other liable parties. The release of one obligor does not necessarily release all other liable parties. See *Community School District of Postville v. Gordon N. Peterson, Inc.*, 176 N.W.2d 169 (Iowa 1970).

Defendant did not allege in his pleadings that the release was intended to be a satis-

faction of all claims, and the trial court found the release insufficient to support a defense, and invited the defendant to make an offer of proof in connection with the claimed defense. The defendant declined to make any offer of proof and does not now assert that the parties intend the release to be in full satisfaction of all claims.

The fact that plaintiff executed a release running in favor of Acoustical Specialties and its insurers is insufficient to sustain a defense of satisfaction running in favor of the defendant in this case. Absent the necessary allegations that the release was in full satisfaction of a claim, the trial court properly sustained the motion to strike. See rule 104(c), Rules of Civil Procedure.

(c) *Expert testimony of witnesses Kennedy and Adams.*

The record indicates that on May 30, 1974 plaintiff, in answer to interrogatories, identified certain experts he expected to call in the litigation. On January 8, 1975, after trial had commenced, plaintiff served defendant with an amendment to answers to interrogatories reflecting that he expected to call James Kennedy, an acoustical contractor, and Warren Adams, a statistical expert and member of the faculty of Drake University. The defendant objected that during discovery proceedings he had asked for the names of any expert witnesses and that the names of Kennedy and Adams were not furnished. The trial court sustained defendant's objection to the witnesses' testifying as experts because their names had not been furnished to defendant in connection with the discovery processes. Trial court ruled however that the witnesses could testify to matters within their personal knowledge.

Defendant made no further objection to the testimony of Kennedy and Adams on the basis and grounds now asserted, namely, that the testimony was outside the realm of personal knowledge. He claims he relied on the ruling of the trial court, and "so did not make further record."

The defendant failed to preserve the error now urged by choosing not to point out to the trial court specifically where the testimony went outside the bounds of personal knowledge. He waived any objection to expert testimony by failing to make timely objections. He further asserts in this appeal that Adams' testimony should have been stricken since it was based on facts outside the record. We are unable to find in the record before us that defendant objected to the testimony of Adams on direct examination, but moved only to strike a reference by Adams that the facts in a stipulation were not true. Such objection at trial was insufficient to preserve error on the issue of expert testimony on facts outside the record now urged here.

Further, we note the objection rests on the use of a fact outside the record in the calculation of future earnings, namely, a projection of the number of hours of work per year. The use of such a number in making calculations of this sort need not reflect an actual fact in the record but is a projection of possibilities.

We find no error preserved on the specific issues defendant raises with regard to expert testimony.

(d) *First report of work injury.*

Defendant next contends trial court erred in sustaining plaintiff's objection to the introduction by defendant of the employer's report of work injury as a business record. Plaintiff's objection that the foundation laid was insufficient was sustained.

The business records exception to the hearsay rule is set out in § 622.28, The Code. Certain indicia of reliability must be shown to justify the admission of the proffered evidence. Defendant failed to show that the report of work injury was recorded at the time of the injury or the source of the information. The preparer of the report was not present to answer the foundational questions.

We find the failure to lay the proper foundation for the injury report rendered the proffered evidence inadmissible, and tri-

al court was correct in excluding it. *Polson v. Meredith Pub. Co.*, 213 N.W.2d 520 (Iowa 1973); *In re Delaney*, 185 N.W.2d 726 (Iowa 1973).

## II. *Jury issues.*

### (a) *Reading of testimony.*

Sometime following its retirement to deliberate upon its verdict, the jury requested the court to have read to it the cross-examination testimony of the plaintiff Moose. Counsel for both parties to this controversy were apprised of the request of the jury and declined to be present at the reading back of the testimony to the jury. Defendant contends the trial court should have ascertained just what the jury wanted to hear read back, rather that granting their request to hear the cross-examination testimony in its entirety.

▪ The court complied specifically with the jury's request to hear the cross-examination testimony of the plaintiff. The failure of the jury, or members of the jury, to specify which testimony they wanted to hear does not constitute error on the part of the court. The trial court is vested with considerable discretion in reading or refusing to have read the testimony of any witness to a jury, and no abuse of discretion is apparent here. See *Hutchinson v. Fort Des Moines Community Services, Inc.*, 252 Iowa 536, 107 N.W.2d 567 (1961).

### (b) *Jury misconduct in discussing insurance.*

It is apparent from the entire record here, particularly the affidavits of certain members of the jury which supported defendant's motion for a new trial, that during its deliberations the jury discussed whether defendant was indemnified by insurance, although the affidavits indicate no conclusion was reached by the members of the jury bottomed on the discussion.

Defendant does not contend plaintiff interjected insurance into the case. In fact, defendant mentioned his insurance to the jury at trial in commenting on the fact that a representative of the company had made certain investigations of the accident involving the plaintiff. Defendant here contends the discussion of insurance was improper even though the plaintiff was not involved in triggering the discussion.

▪ Discussion of insurance does not automatically constitute misconduct by a jury. See *Evans v. Howard R. Green Co.*, 231 N.W.2d 907 (Iowa 1975). Jurors are presumably aware of the facts of everyday life and insurance is certainly within the limits of such awareness. Defendant's motion for a new trial based on what he considered to be misconduct of the jury in discussing insurance was properly overruled by the trial court.

### (c) *Quotient verdict question.*

Defendant alleges the verdict of the jury was a quotient verdict, contrary to law. *Sheker v. Jensen*, 241 Iowa 583, 41 N.W.2d 679 (1950). We do not agree.

▪ In questions involving quotient verdicts, the jurors agree to be bound by the average of figures submitted, each juror setting down a figure and the jurors agreeing to put aside their own judgment to achieve a compromise based upon the average of the figures submitted. This obviously did not occur in this case. The jurors here used the average of each of the several estimated figures to determine the value of pain and suffering of the defendant for the purpose of discussion only.

The setting down of sums such as was done here does not constitute jury misconduct in and of itself. See *Sheker v. Jensen, supra*, at page 681 of 41 N.W.2d, where we said: "The pivotal factor is *the agreement to be bound by the figure thus obtained, made prior to the ballot.*"

It is obvious here the jurors used the average sum only as a tool of discussion, and that the verdict arrived at was not a quotient verdict. The motion for a new trial, based on defendant's contention in this regard, was properly overruled.

## III. *Directed verdict.*

At the close of plaintiff's evidence, the defendant moved for a directed verdict

based mainly upon the proposition that there was a failure of proof that the defendant was negligent in failing to provide safe equipment for the plaintiff to perform his routine and required duties.

In ruling on a motion for a directed verdict a trial court must view the facts in a light most favorable to the party against whom the motion is directed. In this case the jury could find from the evidence that the defendant as supervisor and foreman was responsible for safety measures being carried out in connection with the work plaintiff was required to do. The record conclusively establishes defendant as foreman and supervisor for Acoustical Specialties, Inc., was in charge of ordering scaffolds and scaffold boards and inspecting job sites. There was sufficient evidence to submit the issue to the jury. See *Craven v. Oggero*, 213 N.W.2d 678 (Iowa 1974).

Defendant further based his motion for a directed verdict on the theory that plaintiff was contributorily negligent, that plaintiff had selected the board out of the stack of scaffold material and was experienced in using scaffolds. The issue in this connection is whether plaintiff was contributorily negligent as a matter of law. The trial court found that a reasonable person could view the facts and conclude the plaintiff was not guilty of contributory negligence.

The record does not establish as a matter of law that plaintiff knew the scaffold board was unsafe or that he had knowledge of any defect in the equipment used. Trial court properly found the evidence was subject to differing views, and submitted the issue to the jury.

IV. *Instructions to the jury.*

The defendant states as an issue for review the giving by the court to the jury of several instructions, and the failure of the court to submit to the jury two instructions requested by him. This issue stated in general terms that (1) the instructions submitted to the jury were unsupported by the evidence and (2) that the instructions requested by the defendant were not covered in the remaining instructions, and that the defendant's theory of defense was not properly placed before the jury.

The objection to the instructions relating to the duty owed by defendant to plaintiff is the same issue as that raised on the motion for a directed verdict, namely, that the evidence did not show defendant owed a duty of care to the plaintiff. Our discussion in the foregoing division in this regard points out our conclusion that the evidence generated a jury question as to whether such a duty was owed by defendant.

Defendant further contends that no testimony was adduced to support the instruction on earnings lost from the date of the accident to the date of trial. We note that evidence concerning plaintiff's history of employment and earnings was introduced, as was expert testimony on annual average wage increases in the carpenter trade for the time period involved. Defendant's contention that no testimony as to the value of lost earnings during this period was introduced is without merit.

The statement of the case submitted by the court with its instructions to the jury properly covered defendant's affirmative defense of plaintiff's contributory negligence.

Defendant's requested instructions are all covered by the instructions given by the court, although admittedly they are paraphrased. In those instances where there is a material difference, the requested instructions do not reflect the present state of the law. We find the instructions, taken as a whole, fairly present the defendant's theory of the case and the defenses asserted by him.

V. *Retroactivity of § 85.20, The Code.*

The General Assembly in 1974 adopted an amendment to § 85.20, The Code, to immunize fellow employees from suits for damages unless gross negligence is involved. Acts, 65th G.A., Ch. 1111, § 1 (1974). It is defendant's contention such amendment applies retrospectively to the date of the accident in which plaintiff was injured. In

*Hysell v. Iowa Public Service Co.*, 534 F.2d 775, 783–784 (8th Cir. 1976), the court addressed this question:

"The relevant rule of statutory construction is stated in Code of Iowa § 4.5 (1975), which provides: 'A statute is presumed to be prospective in its operation unless expressly made retrospective.' The amendment to Section 85.20 contains no specific provision or implication as to the scope of its applicability. Therefore, since Section 4.5 requires a presumption of prospective application and since the Iowa Supreme Court has evolved a strict rule of construction against retrospective operation, see, e. g., *City of Monticello v. Adams*, 200 N.W.2d 522, 525 (Iowa 1972), the amendment must, in the absence of contrary indications, be held to have only prospective application."

It is obvious the amendment serves to limit the right of an employee to receive compensation from a co-employee. This limitation is substantive, not procedural. Furthermore, it is not remedial, in that it does not provide for redress of wrongs, but rather makes a policy decision to limit the redress available. See *Schmitt v. Jenkins Truck Lines, Inc.*, 260 Iowa 556, 561, 149 N.W.2d 789, 792 (1967).

The 1974 amendment to § 85.20, The Code, was not intended to apply retrospectively inasmuch as it did not so specifically provide, and consequently defendant was not immune from suit in this case. *Craven v. Oggero, supra.*

## VI. *Excessive verdict.*

Defendant next contends the verdict for the sum of $285,000 is excessive. We apply the criteria set out in *Schnebly v. Baker*, 217 N.W.2d 708 (Iowa 1974), in reviewing the excessiveness of the verdict in this case, and find no merit in defendant's contention in this regard.

Plaintiff Arthur Moose is unable to walk unaided by a prosthetic device. Since the accident he has suffered, and will continue to suffer pain throughout the balance of his life. He has lost his capacity to earn a living.

The instructions of the trial court to the jury with regard to the assessment of damages were proper. The verdict, which includes medical expenses, past and present, loss of future earnings, and recompense for pain and suffering is not so excessive as to shock the conscience or suggest that the verdict was the result of passion or prejudice on the part of the jury. Defendant does not contend the jury applied the wrong measure of damages, and objects only to plaintiff's "windfall", asserting that $285,-000 invested would return much more than plaintiff could have accumulated in his lifetime.

Defendant neglects to consider the diminishing value of income from investments as inflation continues its upward spiral. The trial court properly instructed the jury to note the expert's testimony on both inflation and investment returns. The record demonstrates conclusively that the jury's verdict was a deliberate calculation of plaintiff's loss and damage. We hold the damages are not excessive.

## VII. *The ⅚ jury verdict.*

As defendant did not object to instruction 23, which provided for a verdict reached by ⅚ths of the members of the jury after six hours of deliberation, he is now precluded from raising any objection to the instruction on appeal by rule 196, R.C.P.

We have considered the record in its entirety and find no reversible error. We therefore affirm.

AFFIRMED.