Randy W. BROOKS and Lori
L. Brooks, Appellants,

v.

Bob HOLTZ d/b/a Holtz Construction,
and Lester Building Products,
Appellees.

No. 00–2012.

Supreme Court of Iowa.

April 2, 2003.

Rehearing Denied May 27, 2003.

Joseph J. Bitter of Bitter Law Offices, Dubuque, for appellants.

David L. Riley of Yagla, McCoy & Riley, P.L.C., Waterloo, for appellee Bob Holtz d/b/a Holtz Construction.

Guy R. Cook and Donna R. Miller of Grefe & Sidney, PLC, Des Moines, for appellee Lester Building Products.

TERNUS, Justice.

The appellants, Randy Brooks and Lori Brooks, appeal an adverse jury verdict on their personal injury claim, asserting error in the trial court's ruling on the admissibility of an exhibit and an abuse of discretion in the court's refusal to allow the jury to take a videotape exhibit to the jury room during its deliberations. The court of appeals affirmed the judgment in favor of the appellees, Bob Holtz d/b/a Holtz Construction and Lester Building Products, concluding the plaintiffs had not preserved error on their evidentiary objection and finding no abuse of discretion in the court's decision to withhold the videotape from the jury.

This court granted further review. Because we think error was preserved on the plaintiffs' challenge to the trial court's evidentiary ruling, we vacate the court of appeals decision. Upon our examination of the record, however, we find no reversible error in the trial court's rulings and so affirm the judgment of the district court in favor of the defendants.

I.  *Background Facts and Proceedings.*

Randy Brooks was injured when he fell from the rafters of his detached garage

while installing insulation. At the time of his fall he was sitting on a plank he had placed across two two-by-four rafters. Brooks claimed that one of the two-by-fours had saw cuts in it that caused it to break under the weight of the plank and his body.

A few days after the accident, Brooks' brother and son videotaped the scene of Brooks' fall. This videotape shows a broken two-by-four hanging from the rafters and the other section of the two-by-four on the floor underneath a plank. It also shows a saw cut partially through the broken two-by-four at the site of the break.

Brooks and his wife brought suit against Lester Building Products, who had designed the garage and supplied the materials, and Bob Holtz, the contractor who built the structure. The case proceeded to a jury trial on claims of negligence and strict liability. The jury returned a verdict in favor of the defendants, and the trial court overruled the plaintiffs' posttrial motions.

The plaintiffs' subsequent appeal was transferred to the court of appeals. That court affirmed the district court judgment, and this court then granted the plaintiffs' petition for further review.

## II. Issues.

Although the plaintiffs appealed on several grounds, they address only three issues in their request for further review. First, they claim the district court erred in excluding from evidence a letter signed by Terry Brady, a witness called by the plaintiffs. In a related argument, the plaintiffs claim error in the trial court's refusal to allow their attorney to refer to the letter in his cross-examination of this witness. The final complaint made to this court concerns the trial court's order that the videotape exhibit would not be made available to the jurors during their deliberations.

## III. Error Regarding Signed Letter.

A. *Trial court proceedings.* The plaintiffs called as a witness Terry Brady, who was a member of the first responders team that answered Brooks' emergency call for help. Brady testified that, before he left the site, he tried to determine how far Brooks had fallen so this information could be included in his report. Brady stated he saw a plank lying on the floor and then looked up to see how high the rafters were. He testified he did not see any two-by-fours on the floor or a broken stub of a two-by-four hanging in the air. He did, however, see a small crack and a very small indentation (although he said this may have been an "optical illusion") in a two-by-four rafter located above the fallen plank. Brady denied seeing any cuts on the underside of this two-by-four.

The plaintiffs' attorney attempted to question Brady about statements attributed to him in a letter prepared by plaintiffs' counsel. Apparently, a year prior to trial Brady visited with Brooks and his attorney at the garage where Brooks fell. Later, Brooks' attorney wrote a letter to opposing counsel in which he summarized the support for his clients' case. Brooks' attorney stated that Brady said "the place he [Brady] looked at shortly after he first responded was closer to the back of the garage, not at the front of the garage where [Brooks] fell," and that Brady would "confirm that when he looked up after entering the garage shortly after [Brooks'] injury that he was looking at a different place in the garage than the place where [Brooks] was situated when he fell." A copy of this letter was sent to Brady, who signed an acknowledgement at the end of the letter that he had "received a copy of the enclosed letter and agree[d] with the facts set forth therein."

At trial, Brady admitted he had returned to the garage in the company of Brooks and his attorney and that, subsequent to this visit, he had received a letter from the plaintiffs' attorney. Brady also acknowledged that he had signed the letter.

The plaintiffs then sought to have the letter admitted into evidence for the limited purpose of impeachment. The defendants objected on several grounds: (1) the letter was hearsay; (2) the letter was not a "statement" of the witness; (3) nothing in the letter contradicted the witness's testimony; and (4) portions of the letter relating to settlement negotiations were inadmissible. In response, the plaintiffs agreed to redact any statements relating to settlement, including their counsel's commentary and argument in support of his clients' case.

Without specifying the basis for its decision, the court refused to admit the letter into evidence. The plaintiffs then made an offer of proof, after which the court renewed its ruling and denied the plaintiffs' additional request that they be allowed to refer to the letter for impeachment purposes during their questioning of Brady.

B. *Court of appeals ruling.* The plaintiffs assigned the trial court's ruling with respect to admission and use of the letter as a basis for reversal on appeal. The court of appeals did not reach the merits of this issue, however, because it held error was not preserved. This conclusion was based on the plaintiffs' failure to submit a redacted copy of the letter as part of their offer of proof. We disagree with the court of appeals' resolution of this issue and so discuss the question of error preservation before turning to the merits of the plaintiffs' alleged error.

C. *Error preservation.* Our rules of evidence provide that error may not be predicated on a ruling excluding evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Iowa R. Evid. 5.103(a)(2). We have said that an offer of proof is necessary for two reasons: (1) "to give the trial court a more adequate basis for its evidentiary ruling"; and (2) "to make a meaningful record for appellate review." *State v. Ritchison*, 223 N.W.2d 207, 212–13 (Iowa 1974); *accord State v. Greene*, 592 N.W.2d 24, 27 (Iowa 1999). "[A] meaningful record for appellate review" exists when the court does not have to speculate on the evidence sought to be introduced. *Ritchison*, 223 N.W.2d at 212–13.

The letter at issue here presents a more complex evidentiary question than the typical exhibit because the portions of the letter addressing settlement were clearly inadmissible. *See* Iowa R. Evid. 5.408 (stating offers of compromise, as well as conduct and statements made during compromise negotiations, are generally inadmissible). In such a situation, where part of the evidence is admissible and part is not, "it is incumbent on the offeror, not the judge, to single out the admissible part." 1 John W. Strong, *McCormick on Evidence* § 51, at 219 (5th ed.1999) [hereinafter *McCormick on Evidence*]. "When counsel offers both good and bad together and the judge rejects the entire offer, the offeror may not complain on appeal." *Id.*

In evaluating the sufficiency of the offer of proof in this case, we examine whether the offer of proof made apparent what plaintiffs sought to have admitted. *See Greene*, 592 N.W.2d at 28. Although most situations involving a writing that is only partly admissible will call for counsel to submit a redacted version of the challenged exhibit in order to fully inform the trial judge, and the appellate court, of the

portions counsel seeks to introduce, we do not think that step was required here. That is because there was no disagreement between the parties that the portions of the letter discussing settlement would be omitted before the exhibit's admission into evidence. Furthermore, based on our review of the letter and the statements made by plaintiffs' counsel at trial, we think the trial court would have had no problem in identifying the portions of the letter plaintiffs' counsel sought to use as impeachment, as distinguished from the portions that would be redacted. Defendant Holtz concedes as much in his brief, wherein he states that "[i]t is clear" from the plaintiffs' offer of proof what the plaintiffs wanted to question Brady about in reference to the letter.

Under these circumstances, we do not think the failure of the plaintiffs to submit a redacted copy of the letter in its offer of proof caused any confusion or speculation by the trial court as to the offered evidence, nor would this omission require the reviewing court to speculate as to the evidence at issue. Accordingly, the offer of proof made in this case accomplished its intended purpose and was, therefore, not deficient. *Cf. Ritchison*, 223 N.W.2d at 213 (holding error preserved where specific evidence sought to be introduced "was abundantly clear" from the record even though no offer of proof was made); *State v. Buckner*, 214 N.W.2d 164, 168 (Iowa 1974) (holding no offer of proof necessary when the evidence sought to be admitted was obvious from the context within which the evidentiary issue arose).

■ D. *Propriety of court's exclusion of letter.* The plaintiffs argue on appeal that portions of the letter were admissible as a prior inconsistent statement of witness Brady, and therefore the trial court erred in excluding the letter and prohibiting the plaintiffs from questioning

Brady about it. The defendants contend the trial court was correct because the proffered statements in the letter were hearsay. They point out that Brady did not make any statements at trial that were inconsistent with the statements attributed to him in the letter. Our review of the trial court's ruling is for correction of errors of law. *McElroy v. State*, 637 N.W.2d 488, 493 (Iowa 2001) (stating "we review hearsay rulings for correction of errors at law").

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted.*" Iowa R. Evid. 5.801(*c* ) (emphasis added). There is no dispute that the statement at issue here was not made by the declarant—Brady—while testifying at trial. The fighting issue is whether it was offered as proof of the matter asserted, i.e., that Brady looked at a place other than the site of the fall when he viewed the scene on the day of the accident. The plaintiffs claim the evidence was not offered to prove this fact. They assert it was offered for the limited purpose of impeachment: to show that Brady has said different things at different times, and so his testimony in general was unreliable.

■ One noted treatise on evidence explains the use of impeachment evidence in this way:

> The attack by prior inconsistent statement is not based on the theory that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, raising a doubt as to the truthfulness of both statements.

*McCormick on Evidence* § 34, at 126. Because the out-of-court statement is offered to prove the witness's testimony is unrelia-

ble rather than to prove the truth of the matter asserted out of court, the prior inconsistent statement is not substantive evidence. *State v. Allen,* 348 N.W.2d 243, 246 (Iowa 1984). Thus, "[a] prior inconsistent out-of-court statement offered for impeachment purposes falls outside of the definition of hearsay." *State v. Nance,* 533 N.W.2d 557, 561 (Iowa 1995).

■ As these principles make apparent, the foundational basis for admissibility of an out-of-court statement *as impeachment* is a contradictory statement by the declarant at trial. *Bauer v. Cole,* 467 N.W.2d 221, 225 (Iowa 1991) ("[A] previous statement of a witness cannot be used for impeachment unless the present testimony is at material variance with the prior statement."). *See generally McCormick on Evidence* § 34 (discussing degree of inconsistency required for admission of prior inconsistent statement). The defendants asserted at trial that Brady had not testified inconsistently with the factual assertions attributed to him in the letter prepared by the plaintiffs' attorney. They make the same argument on appeal: "Brady did not make any contradictory statements that would allow for impeachment."

The plaintiffs' only response to the defendants' argument is a general statement in their brief that Brady's "testimony is significantly at variance on critical points." They do not, however, state the precise testimony from Brady that is at variance with the letter, nor do the plaintiffs direct the court to exactly where in the record

such contradictory testimony appears. We will not assume such testimony exists in the absence of its identification, together with adequate citation to the record. *See Estate of Leonard v. Swift,* 656 N.W.2d 132, 147 n. 4 (Iowa 2003) (refusing, where brief contained inaccurate reference to place in appendix where pertinent court orders could be found, to undertake an independent review of the record to locate the orders or to consider party's claim of issue preclusion based on such orders); *Hoefer v. Wis. Educ. Ass'n Ins. Trust,* 470 N.W.2d 336, 342 (Iowa 1991) (stating failure to cite to record or transcript for factual support permits court "to ignore [a party's] contentions altogether"). Without such testimony, the plaintiffs cannot claim that the letter was offered as impeachment, i.e., to show the witness has said different things on different occasions.

■ Because we cannot conclude on the record before us that the prior statements are impeaching, we must evaluate the admissibility of these statements on the basis of the only other purpose for which they could be offered—as substantive evidence to prove that Brady looked in the wrong place on the day of the accident. Brady's prior statements are, however, inadmissible as substantive evidence because they are hearsay: out-of-court statements "offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(*c*) (defining hearsay).[1]

In summary, we conclude Brady's prior statements are inadmissible hearsay. Ac-

---

**1.** Although Iowa Rule of Evidence 5.801(*d*)(1) removes a limited category of out-of-court statements from the scope of the hearsay definition, that rule does not apply here. Rule 5.801(*d*)(1) provides in relevant part:

The following statements are not hearsay:
   (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsis-

tent with the declarant's testimony, *and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . .*

Iowa R. Evid. 5.801(*d*)(1) (emphasis added). Of course, the plaintiffs cannot rely on this rule here because the letter at issue does not contain statements given by Brady under oath at a trial, hearing, deposition, or other proceeding.

cordingly, the trial court did not err in refusing to admit the letter as an exhibit and in prohibiting the plaintiffs from using the letter to cross-examine Brady.

### IV. Court's Ruling on Jury's Use of Videotape Exhibit.

As noted previously, the plaintiffs introduced into evidence a videotape of the accident scene. This videotape was filmed by Brooks' son and shows Brooks' brother in the garage, pointing to and describing the location and condition of the plank and the two-by-four allegedly involved in Brooks' fall. The videotape also contains commentary by both individuals on their understanding of how the accident occurred and the "negligence" of the "idiot" who constructed the building.

Although the tape was shown to the jury several times during the trial and was admitted into evidence, the trial court refused the plaintiffs' request that the jury be allowed to have the tape during its deliberations. The jury itself never requested the tape during its consideration of the case. The plaintiffs complain that the court's ruling constitutes an abuse of the trial court's discretion and reversible error.

"[S]ubmission of exhibits to the jury is a matter resting in [the] trial court's discretion." *Heth v. Iowa City,* 206 N.W.2d 299, 303 (Iowa 1973); *accord State v. Baumann,* 236 N.W.2d 361, 366 (Iowa 1975) (stating a trial court has "considerable discretion" in determining what exhibits the jury may have during its deliberations). We will not upset a trial court's discretionary decision unless the court exercises its discretion " 'to an extent clearly unreasonable' " or rests its decision on untenable grounds. *Greene,* 592 N.W.2d at 27 (citation omitted). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on

an erroneous application of the law." *Graber v. City of Ankeny,* 616 N.W.2d 633, 638 (Iowa 2000).

Iowa Rule of Civil Procedure 1.926 provides, "When retiring to deliberate, jurors ... shall take with them all exhibits in evidence except as otherwise ordered." Here, the court ordered that the videotape not be taken to the jury room. We have previously noted when certain types of evidence, such as depositions, are available to the jury, such evidence might be given "disproportionate importance in relation to other trial testimony, for which the jurors were required to call upon their recollection only." *Baumann,* 236 N.W.2d at 366; *see also* Iowa R. Evid. 1.926 ("Depositions shall not be taken [to the jury room] unless all of the evidence is in writing and none of it has been stricken."). In *Baumann,* we upheld a trial court's decision to withhold audio tape recordings from the jury during its deliberations, even though the jury had requested the opportunity to listen to the tapes during its consideration of the case. *Id.*

The same result is warranted here. In determining that the videotape would not be sent with the jury, the trial court stated, "I personally think the jury has already seen the videotape more often than required." Clearly, the trial court thought additional viewing of the tape would overemphasize this evidence. This judgment call was one for the trial court to make. Particularly in view of the oral commentary included in the videotape, there was nothing unreasonable about the court's decision. Therefore, we will not disturb the trial court's ruling on this issue.

### V. Summary and Disposition.

Although the plaintiffs' offer of proof was adequate to preserve error on the trial court's refusal to admit evidence of prior, out-of-court statements made by witness

Brady, the court's ruling was not erroneous. These statements were inadmissible hearsay. Similarly, the trial court did not abuse its discretion in refusing to allow the videotape of the accident scene to be used by the jury during its deliberations.

We vacate the court of appeals decision and affirm the district court judgment in favor of the defendants.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**